UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEMAND DOGS, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 3:23-cv-13196-MGM |
| | ) | |
| JOHN BLAIR | ) | |
| | ) | |
| Defendant/ | ) | |
| Third-Party -Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN ANDERSON and | ) | |
| KEITH SMITH | ) | |
| Third-Party Defendants | | |

**THIRD PARTY COMPLAINT OF JOHN BLAIR AGAINST
BRIAN ANDERSON AND KEITH SMITH**

Third-Party Plaintiff John Blair ("Blair") asserts the following Third Party Complaint against Third Party Defendants Brian Anderson ("Anderson"), and Keith Smith ("Smith") as follows:

**PARTIES**

1.  Blair is a software engineer and resident of the Commonwealth of Kentucky, currently residing in Lexington, Kentucky. At all relevant times, Blair has been a resident and citizen of the Commonwealth of Kentucky.

2.  Defendants Demand Dogs, LLC ("Demand Dogs") is a limited liability company. Upon information and belief, Demand Dogs has its principal place of business in Massachusetts. Upon information and belief, Demand Dogs is organized under the laws of Delaware. Upon

103353508

information and belief, Demand Dogs is owned by Anderson and Smith. Upon information and belief, Anderson is a resident of Murfeesboro, Tennessee. Upon information and belief, Smith is a resident of South Hadley, Massachusetts. Demand Dogs is a sales and marketing company providing its customers with marketing lead generation services using artificial intelligence. Upon information and belief, Demand Dogs does not manufacture any physical products for sale to third parties and does not manufacture or sell physical articles and products to the wine and spirits industry.

3. Anderson is an individual who, upon information and belief, resides in Murfreesboro, Tennessee. Blair and Anderson met each other while attending Centre College in Danville, Kentucky. Upon information and belief, Anderson is an owner of a company called Barrel Proof Technologies, LLC, ("Barrel Proof"). Upon information and belief, Anderson works in marketing and advertising.

4. Smith is an individual who, upon information and belief, resides in South Hadley, Massachusetts. Upon information and belief, Smith is an owner of a company called Barrel Proof Technologies, LLC, ("Barrel Proof"). Upon information and belief, Smith works in marketing and advertising.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over Smith and Anderson by virtue of their roles as principals and owners of a business headquartered in the district over which this Court has jurisdiction and by virtue of their forum-related contacts and actions in this case.

6. This Court has jurisdiction over the Counterclaims under 28 U.S.C. § 1331 as the Counterclaims seeks federal declaratory relief under 28 U.S.C. § 2201 regarding joint ownership of a patent under 35 U.S.C. § 116. This Court further has jurisdiction over the Counterclaims under

28 U.S.C. § 1332 as the Counterclaims asserted herein are between citizens of different states and the amount in controversy exceeds $75,000.

## BACKGROUND FACTS

7. Blair is a long-time Kentucky resident. Among other things, Kentucky is known for its bourbon products and is home to the Kentucky Bourbon Trail, which features numerous bourbon distilleries. Tours along the Bourbon Trail and bourbon festivals are a prominent feature of Kentucky culture. By virtue of Blair's experiences living in Kentucky, Blair has a general familiarity with the bourbon business. A notable feature of Kentucky bourbon is that, after distillation, bourbon is aged in a special oak bourbon barrel for at least two years, and generally four or more years, before being bottled and sold. During the aging process, bourbon may be lost due to evaporation or soakage into the barrel, often referred to as the Angel's Share and Devil's Cut, respectively. Accordingly, bourbon distilleries seek methods and improvements that will reduce the Angel's Share and Devil's Cut.

8. In 2018, Blair conceived of methods to measure and monitor the volume of bourbon as it ages with minimal impact on the integrity of the barrel and in ways intended to reduce the Angel's Share and, in 2019, further solidified those ideas while attending the Bourbon on the Banks Festival in Frankfort, Kentucky. Among the methods conceived by Blair in 2018 included using a sensor and communication system to provide regular measurements and alerts to a distiller regarding any fluid (bourbon) volume changes in the barrel. Blair further conceived of using a strain gauge to take certain measurements relating to a single barrel (*e.g.*, temperature and pressure) for the purpose of monitoring the volume without having to tap the barrel. Blair further conceived of incorporating unique software to analyze the collected information over time and

prepare reports (collectively, the methods conceived by Blair are referred to herein as the "Blair Methods").

9. After conceiving of the Blair Methods, Blair began informally planning how he would test those methods.

10. Meanwhile, Blair was also completing a Master of Science Degree in Computer Science and Information Engineering.

11. As Blair was completing his Master of Science degree, he was contacted by Anderson. Blair knew Anderson from their time together as classmates at Centre College in Danville, Kentucky. At that time, Blair considered Anderson to be a personal friend.

12. Anderson desired for Blair to work on a software development project at a company he owned with Smith called Demand Dogs. Demand Dogs is an advertising and marketing company that, according to its own website, provides only marketing lead and generation services for a variety of customers or businesses. Demand Dogs has no offices in Kentucky and no visible presence in the wine & spirits industry, including no presence whatsoever in the bourbon industry. Upon information and belief, Demand Dogs does not manufacture any physical articles or sell physical products in the wine & spirits industry.

13. At all times, Blair was informed and understood that he was being sought by Demand Dogs to develop software code for an artificial intelligence tool to assist companies in finding marketing leads and all negotiations leading up to Blair's ultimate employment with Demand Dogs confirmed Blair's belief.

14. On December 3, 2020, Blair signed an "Employment Agreement" with Demand Dogs. At all times, Blair understood that Demand Dogs was hiring him exclusively to develop software code for an artificial intelligence tool to generate marketing leads. In fact, all of Blair's

103353508

work for Demand Dogs subsequent to signing the Employment Agreement involved developing source code for such an artificial intelligence tool, which included leading an international team for that purpose. The nature of Blair's work necessitated working nontraditional hours to accommodate international schedules. At no point during Blair's employment with Demand Dogs was Blair ever asked or directed by Demand Dogs to conceive of inventions for the bourbon industry, and Blair never understood that Demand Dogs had any interest in entering the bourbon industry.

15. When Demand Dogs ultimately decided *not* to introduce its artificial intelligence marketing tool in the market, Demand Dogs eliminated Blair's position and terminated his employment.

16. Contrary to the numerous blatant and brazen misrepresentations in the Complaint filed by Demand Dogs against Blair in the above-captioned matter, the Blair Methods had absolutely no relationship with or relevance to Blair's employment with Demand Dogs or the work of Demand Dogs, generally. Indeed, Blair's conception of the Blair Methods in 2018 long predated the December 3, 2020 Employment Agreement.

17. After initially conceiving the Blair Methods, Blair continued to develop his ideas, and, in 2022, privately disclosed them to Anderson, who Blair still considered at that time to be a personal friend. Anderson initially expressed enthusiasm for Blair's ideas. In discussing Blair's ideas further, Anderson told Blair that Anderson and Smith may be able to aid in securing funding for the development of his ideas and may have contacts that could help them produce a prototype.

18. Ultimately, in late 2022 or early 2023, Blair, Smith, and Anderson agreed to a joint venture/partnership to pursue the development of a device and product that would encompass the Blair Methods and additional features (the Blair Methods and the additional features are referred

103353508

to collectively as the "Bourbon Barrel Technology"). Specifically, Blair, Smith, and Anderson agreed that the joint venture/partnership would engage a patent attorney to prepare a patent application. The joint venture/partnership further agreed to create a limited liability company in which they would each have an equal ownership interest to market and sell the Bourbon Barrel Technology.

19. To that end, in February 2023, Anderson, on behalf of the joint venture/partnership, engaged Dr. Kelly Hollowell ("Hollowell") of the Hollowell Patent Group to prepare a provisional patent application. In connection with the preparation of the provisional patent application, the joint venture/partnership was asked to complete and submit an "Invention Disclosure Form." Together, Blair and Anderson completed the Invention Disclosure Form with Blair drafting significant portions of the invention description.

20. On February 20, 2023, on behalf of the joint venture/partnership, Anderson sent an email to Hollowell attaching the completed Invention Disclosure Form and stating, "I have CC'd my partners; I did have everyone sign a DocuSign and can forward it to you once its completed." As Anderson indicated, he copied Blair and Smith on the email. Notably, Anderson sent his February 20, 2023 email to Hollowell using his personal email address and copied Smith and Blair using their personal email addresses.

21. Among other things, the Invention Disclosure Form submitted by Anderson identified each of Blair, Anderson, and Smith as inventors. In the section asking for the date of invention, the Invention Disclosure Form explained that Blair conceived of the Blair Methods, which formed the basis for the patent application, in 2018 and that the Blair Methods were disclosed to Anderson in the Fall of 2022. No portion of the Invention Disclosure Form provided that Demand Dogs had any interest whatsoever in the inventions described therein.

22. Importantly, in response to questions on the Invention Disclosure Form about whether any of the inventors had "any obligation to assign any rights in the invention to others" or whether the invention "was developed in the course of any of the inventor's employment and whether any employer may have rights to the invention," Anderson stated, "No. None of the inventors are contractually blocked while considering this idea. No other entity has a claim to this product." Likewise, in response to the question "Do you have an agreement with your employer that you will assign any inventions you may make to the employer?" Anderson, on behalf of the inventors, answered, "No."

23. Based on the Invention Disclosure Form, Hollowell prepared and filed US Provisional Application No. 63/487,014 on February 27, 2023, claiming the Bourbon Barrel Technology, (the "Provisional Application"). The Provisional Application describes, among other things, the Blair Methods, and contains two independent claims. Claim 1 is directed at a method and Claim 2 is directed at an apparatus. Claim 1 and Claim 2 each incorporates the Blair Methods.

24. In the Application Data Sheet accompanying the filing of the Provisional Application, Blair, Anderson, and Smith were identified as the inventors. No other entity, including Demand Dogs, was identified as an applicant, assignee, or as having any ownership interest in the Provisional Application whatsoever.

25. As contemplated through the joint venture/partnership arrangement, Blair paid Anderson for his one-third share of the attorney costs relating to the preparation of Provisional Application.

26. Thereafter, on behalf of the joint venture/partnership Smith engaged attorney Ronald Dunbar ("Attorney Dunbar") to prepare and file documents necessary to form a limited liability company to carry out the purposes of the joint venture/partnership including the

development and exploitation of the Bourbon Barrel Technology. After weeks of delay, Blair inquired as to the status of the preparation of the company documents. Blair was assured that an attorney was preparing the necessary documents and Blair was copied on email communications with Attorney Dunbar regarding such preparation.

27. After more delay, Blair continued to work on aspects of the joint venture/partnership and to inquire as to the status of the company documents. Blair even offered to engage his attorney to prepare the documents.

28. On September 30, 2023, Anderson messaged Blair stating, "We're registered," specific referring to the "TN LLC," that is, Barrel Proof Technologies, LLC, which is registered as a Tennessee limited liability company. When Blair asked to see the organizing documents, Anderson assured Blair that he would provide the documents to him but never did so. At that time, Anderson did not tell Blair that Anderson and Smith had formed Barrel Proof Technologies, LLC, without naming him as a member. Instead, Smith and Anderson continued to lead Blair to believe that the joint venture/partnership was continuing, and, thereafter, Blair proceeded to establish new company emails for each of them. Only when Blair received the Complaint in the above-captioned action did Blair confirm that Anderson and Smith had wrongfully excluded him from the formation of the company intended to develop and exploit his ideas.

29. Since Anderson and Smith wrongfully expelled Blair from the joint venture/partnership, Anderson and Smith have offered false, self-serving, and contradictory explanations as to why Blair is not required to be a member of Barrel Proof Technologies, LLC, and has no ownership interest in the Provisional Application, including by making the blatantly false assertion that Blair assigned the Blair Methods and his interest in the Provisional Application to Demand Dogs.

30. Because of Anderson and Smith's wrongful actions and misrepresentations regarding the Provisional Application, and in spite of the numerous communications providing otherwise, Dr. Hollowell has informed Blair that she will represent only Anderson in the prosecution of a nonprovisional patent applications claiming priority to the Provisional Application and further wrongly advised that Blair has no right to have representation in the preparation and filing of such nonprovisional application. .

31. Upon information and belief, Anderson and Smith have further continued to pursue and have benefitted from the pursuit of opportunities to develop and exploit the Bourbon Barrel Technologies, opportunities that rightfully belong to Blair and/or the joint venture/partnership. Anderson and Smith's attempts to usurp Blair's inventions as their own; wrongfully expel Blair from their joint venture/partnership; and deny Blair his ownership interest in the Provisional Application have damaged and continue to damage Blair.

## CLAIMS

**COUNT I – DECLARATORY JUDGMENT UNDER 28 USC § 2201 THAT BLAIR IS AN INVENTOR AND OWNER OF THE PROVISIONAL APPLICATION PURSUANT TO 35 USC § 116**

32. Blair incorporates by reference the allegations set forth in paragraphs 1-31 as though fully set forth herein.

33. Blair is, at a minimum, a joint inventor of Claims 1 and 2 of the Provisional Application. As an inventor, Blair is an owner of the Provisional Application. Blair has not assigned his ownership interest in the Provisional Application to any other individual or entity.

34. Demand Dogs has made allegations in its Complaint filed in the above-referenced Action that Blair is not an owner of the inventions claimed in the Provisional Application and other

103353508

allegations wrongly suggesting that Blair is not an inventor of the inventions claimed in the Provisional Application.

35. Through their conduct and misrepresentations, Smith and Anderson have wrongfully precluded Blair from participating in the prosecution of nonprovisional patent applications claiming priority to the Provisional Application. Upon information and belief, Smith and Anderson plan to wrongfully remove Blair's name from nonprovisional patent applications claiming priority to the Provisional Application.

36. Smith and Anderson are necessary parties to any determination as to the inventorship and ownership of the Provisional Application.

37. Accordingly, an actual controversy among the parties exist as to the inventorship and ownership of the Provisional Application.

38. Blair is entitled to a declaration that he is a joint inventor and joint owner of the Provisional Application and any and all other patent applications and/or patents claiming priority to the Provisional Application. Blair is further entitled to any other equitable relief necessary to restore Blair's ownership of the Provisional Application and any and all patent applications and/or patents claiming priority to the Provisional Application.

**COUNT II: BREACH OF JOINT VENTURE/PARTNERSHIP AGREEMENT AND BREACH OF FIDUCIARY DUTY AGAINST SMITH AND ANDERSON**

39. Blair incorporates by reference the allegations set forth in paragraphs 1-38 as though fully set forth herein.

40. Blair formed a joint venture/partnership with Smith and Anderson for the purpose of developing and exploiting the Bourbon Technology and filing a patent application covering the same. Under the parties' agreement, each of Smith, Anderson, and Blair would share an equal ownership in any company formed to develop and exploit the Bourbon Technology. As joint

venturers/partners, Smith and Anderson owed fiduciary duties to Blair and the joint venture/partnership.

41. As set forth herein, Smith and Anderson breached the parties' joint venture/partnership agreement and/or their fiduciary duties as joint venturers/partners by secretly forming Bourbon Proof Technologies, LLC, without naming Blair as a Member and pursuing opportunities to develop and exploit the Bourbon Barrel Technology that belong to Blair and/or the joint venture/partnership.

42. Smith and Anderson have further breached the joint venture/partnership agreement and/or their fiduciary duties as joint venturers/partners by precluding Blair from participating in the prosecution of a nonprovisional patent application claiming priority to the Provisional Application and denying Blair his ownership interest in the Provisional Application.

43. Smith and Anderson's breaches of the joint venture/partnership agreement and/or their fiduciary duties to Blair have damaged Blair.

44. Blair is entitled to monetary damages including, but not limited to, expectation damages and compensatory damages, including lost profits.

45. Smith and Anderson have acted toward Blair with malice, fraud, and oppression and Blair is entitled to punitive damages and his attorney fees.

**COUNT III: UNJUST ENRICHMENT**

46. Blair incorporates by reference the allegations set forth in paragraphs 1-45 as though fully set forth herein.

47. As set forth herein, Blair conceived of the Blair Methods and is an inventor of the Bourbon Barrel Technology as claimed in the Provisional Patent Application. Blair disclosed his inventions to Smith and Anderson and assisted in the preparation and costs for the Provisional

Application in reliance upon promises by Smith and Anderson that they would develop and exploit the Bourbon Barrel Technology as a joint venture/partnership.

48. As set forth herein, Smith and Anderson have wrongfully expelled Blair from the joint venture/partnership and wrongfully denied Blair his ownership interest in the Provisional Application and precluded him from participating in the prosecution of any nonprovisional applications claiming priority to the Provisional Application.

49. Upon information and belief, Smith and Anderson have usurped business and other economic opportunities belonging to Blair and/or the joint venture/partnership as a result of Blair's ideas and inventions without providing any consideration or compensation to Blair.

50. Smith and Anderson's retention of the benefit of Blair's inventions without compensation is inequitable.

51. Blair is entitled to compensation for his inventions and any all other relief which equity requires.

WHEREFORE, the Counterclaim-Plaintiff respectfully requests the Court to enter judgment in his favor and against Counterclaim-Defendants on his Counterclaims as follows: (a) declaratory judgment that Blair is a joint inventor and joint owner of the Provisional Application; (b) judgment against Anderson and Smith for breach of joint venture/partnership agreement and/or breach of fiduciary duty; (c) judgment against Anderson and Smith for unjust enrichment; (d) compensatory damages in an amount to be determined at trial; (e) prejudgment and post-judgment interest; (f) costs and expenses herein expended, including reasonable attorneys' fees; and (g) all other just and proper relief.

Respectfully submitted,

Defendant/Third Party Plaintiff,
John Blair
By His Attorneys,

/s/ *Grace V.B. Garcia*
Grace V.B. Garcia, BBO #640970
ggarcia@morrisonmahoney.com
Kathleen A. Federico, BBO #682722
stroiano@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax:    617-342-4914


STOLL KEENON OGDEN PLLC
Dana R. Howard (pro hac vice anticipated)
Connor Egan (pro hac vice anticipated)
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000
dana.howard@skofirm.com
connor.egan@skofirm.com

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing document was served to the following parties, via the Court's CM/ECF system, this the 24th day of January 2024:

Ronald W. Dunbar, Jr.
dunbar@dunbarlawc.com
BBO No. 567023
Dunbar Law PC
10 Post Office Square
Boston, MA 02108
Telephone: (617) 244-3550

*Counsel for Plaintiff*

/s/ *Grace V.B. Garcia*
*Counsel for Defendant/ Third-Party Plaintiff*

103353508