UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEMAND DOGS, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 3:23-13196-MGM |
| | ) |
| JOHN BLAIR, | ) |
| | ) |
| Defendant/Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH SMITH and BRIAN ANDERSON, | ) |
| | ) |
| Third Party Defendants. | ) |

MEMORANDUM AND ORDER CONCERNING JOHN BLAIR'S MOTION FOR LEAVE TO FILE SECOND AMENDED THIRD-PARTY COMPLAINT
(Dkt. No. 60)

ROBERTSON, U.S.M.J.

I.  Procedural Background

This action commenced with claims asserted by plaintiff Demand Dogs LLC ("D.D.") against defendant and third-party plaintiff John Blair ("Blair") concerning ownership of U.S. Provisional Patent Application No. 63/587,014 (Dkt. No. 60-1 at 2). Blair answered the complaint, asserted a counterclaim against D.D., and filed a third-party complaint against Brian Anderson ("Anderson") and Keith Smith ("Smith") (Dkt. Nos. 7, 8). On January 14, 2025, the court dismissed D.D.'s claims for lack of standing (Dkt. No. 53). On April 30, 2025, the court granted Blair's motion to amend his counterclaim and third-party complaint in part, authorizing him to file an amended counterclaim and third-party complaint as to D.D., Anderson, and Smith,

1

and denied without prejudice so much of his motion as sought to add Barrel Proof Technologies, LLC ("Barrel Proof") as a third-party defendant based on Blair's failure to certify compliance with Local Rule 15.1, which provides that a party moving to amend a pleading to add a new party must serve the motion to amend on the proposed new party at least 14 days in advance of filing the motion (Dkt. No. 58). Blair had not certified that he had served Barrel Proof in advance of seeking to add it as a new third-party defendant. Now before the court is Blair's motion to amend his third-party complaint to add Barrel Proof as a third-party defendant following his compliance with Local Rule 15.1 (Dkt. No. 60). Barrel Proof has opposed the motion (Dkt. No. 63). For the reasons set forth below, Blair's motion is granted.

      II.      <u>Facts Alleged in Blair's Proposed Second Amended Third-Party Complaint ("SATPC") Against Smith, Anderson, and Barrel Proof</u>

Blair is a software engineer residing in Lexington, KY (Dkt. No. 60-2, ¶ 1). Beginning in or around 2018, Blair conceived of a method to measure and monitor the volume of bourbon aging in oak barrels without damaging the integrity of the barrels (Dkt. No. 60-2, ¶ 10). Anderson is a former college classmate of Blair and, on information and belief, an owner of D.D. (Dkt. No. 60-2, ¶¶ 2, 13). On or around December 3, 2020, after conversations with Anderson, Blair signed an employment agreement with D.D., by which D.D. hired him to develop software code for an artificial intelligence tool to generate marketing leads (Dkt. No. 60-2, ¶ 16). According to Blair, his conception of, and work on, methods to measure bourbon volume in sealed oak barrels was unrelated to his D.D. employment (Dkt. No. 60-2, ¶¶ 14-16). Blair's employment with D.D. was terminated when D.D. decided not to introduce its artificial intelligence marketing tool (Dkt. No. 60-2, ¶ 17).

In 2022, Blair disclosed his bourbon-measuring idea to Anderson, who was enthusiastic about the idea and told Blair that he and Smith might be able to help Blair find funding to

develop the idea (Dkt. No. 60-2, ¶ 19). In or around late 2022 or early 2023, Blair, Anderson, and Smith agreed to a joint venture/partnership to pursue development of Blair's concept, with some additional features (Dkt. No. 60-2, ¶ 20). In February 2023, Anderson, on behalf of the joint venture/partnership, retained an individual to prepare a provisional patent application. The invention disclosure form submitted with the patent application identified Blair, Anderson, and Smith as the inventors (Dkt. No. 60-2, ¶¶ 21, 23). Blair paid Anderson one third of the attorney fees incurred in preparation of the provisional patent application (Dkt. No. 60-2, ¶ 27). On September 30, 2023, Anderson emailed Blair informing Blair that Barrel Proof, a company formed to develop and market Blair's ideas for monitoring bourbon volume in closed barrels, had been registered as a Tennessee limited liability company. Blair later learned that Anderson and Smith had formed Barrel Proof without including him as a member (Dkt. No. 60-2, ¶ 30). Blair alleges that Smith and Anderson have continued to pursue and benefit from opportunities based on his invention (Dkt. No. 60-2, ¶ 33).

The provisional patent application expired on or around February 27, 2024 (Dkt. No. 60-2, ¶ 37). In the meantime, Smith and Anderson caused Barrel Proof to file a nonprovisional patent application, including Blair's inventions, without notifying him. This patent application identified Anderson and Smith as inventors and identified Barrel Proof as the patent owner and applicant (Dkt. No. 60-2, ¶¶ 35-36). On October 15, 2024, the U.S. Patent and Trademark Office issued a patent based on the nonprovisional patent application ("329 Patent").

III.    Discussion

Barrel Proof argues that Blair's motion to amend should be denied as futile for two reasons. First, Barrel Proof contends that Blair has failed to state a federal claim because patent ownership is a question of state law (Dkt. No. 63 at 3-5). Second, Barrel Proof contends that the

court lacks personal jurisdiction over it (Dkt. No. 63 at 5-6). On this record, neither of these contentions is persuasive.

    A.    Federal Question Jurisdiction

Count I of Blair's STACP asserts a claim of inventorship under 28 U.S.C. § 256 ("§ 256") as to identified claims in the 329 Patent and alleges that claims 1-4, 9-10, and 12-13 are directly derived from his original ideas and contributions, showing his inventive contributions to the 329 Patent. He further contends that subsequent adaptations in the 329 Patent rely on his foundational ideas (Dkt. No. 60-2, ¶¶ 45-48). On this basis, Blair claims that, at a minimum, he is a joint inventor of claims 1-4, 9-10, and 12-13 of the 329 Patent (Dkt. No. 60-2, ¶ 45). Count I of the STACP seeks a declaration pursuant to § 256 that Blair is an inventor as to part or all of the 329 Patent, and, as such, entitled to financial benefits that would flow from acknowledgment of his role as an inventor – or *the* inventor – and a resulting ownership interest in the 329 Patent (Dkt. No. 60-2, ¶¶ 44-53).

Defendant is correct that patent ownership is generally not a question of federal law. A federal court will have federal question jurisdiction only when "'either … patent law creates the cause of action or … the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" *Doukas v. Ballard*, 825 F. Supp. 2d 377, 380 (E.D.N.Y. 2011) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)). A "dispute over property ownership does not properly fall under federal law just because the property is a federally-created interest like a trademark or a copyright [or a patent]." *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997); *see also, e.g., Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997).

4

Barrel Proof, however, fails to acknowledge the well-established body of law holding that "'issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction ….'" *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010) (citation omitted). *See Pappalardo v. Stevins*, 746 F. App'x 971, 974 (Fed. Cir. 2018) ("'[I]ssues of inventorship … present sufficiently substantial questions of federal patent law to support jurisdiction.'" (alteration sin original) (quoting *Bd. of Regents, Univ. of Tex. Sys. v. Nippon Tel. & Tel.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005)). "The purpose of § 256 is to 'reward the actual inventors of technological advances.'" *Ki Beom Kim v. Dyna Flex, Ltd.*, 525 F. Supp. 3d 999, 1007 (E.D. Mo. 2021) (quoting *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1554 (Fed. Cir. 1997)). Thus, "courts have consistently held that 'the field of federal patent law preempts any state law that purports to define rights based on inventorship.'" *Id.* (quoting *HIF Bio, Inc.*, 600 F.3d at 1353).

On its face, Blair's STACP raises a genuine question about inventor status with respect to the 329 Patent. The STACP alleges that the 329 Patent includes claims that Blair invented, and that the patent as a whole depends on his original conception – or invention – of a system designed to measure and monitor the volume of bourbon in a sealed oak barrel over time with minimal impact on the integrity of the barrel (Dkt. No. 60-2, ¶ 10). Blair alleges that he disclosed his invention to Anderson and contributed substantially to preparation of the provisional patent application in anticipation of sharing profits from the technology (Dkt. No. 60-2, ¶¶ 19-21). He further alleges that Anderson and Smith subsequently caused the application for the 329 Patent to be filed, asserting claims derived directly from Blair's invention, identifying themselves as inventors, and failing to identify Blair as an inventor (Dkt. No. 60-2, ¶ 36).

While the cases arise in the context of removal, Blair's allegations and the claims he asserts on the basis of those allegations are similar to those made by the plaintiffs in *Larson v. Correct Craft, Inc.*, 569 F.3d 1319 (Fed. Cir. 2009), and in *Kim*. In the former case, plaintiff Borden Larson ("Larson"), an engineer, invented a so-called wakeboard tower as part of his re-design of a Correct Craft boat. Correct Craft told Larson they were going to seek patent protection for this invention. Correct Craft eventually received several patents for the wakeboard tower, in which Larson was only identified as a co-inventor. *Larson*, 560 F.3d at 1322. The court held that, although Larson had not pled a § 256 claim, by his requests for declaratory relief, he sought "a judicial determination that he, not [other Correct Craft employees] is the true and sole inventor of the wakeboard tower." *Id.* at 1325. The court held that Larson had alleged a well-pleaded patent claim for correction of inventorship pursuant to § 256.[1] *Id.* In *Kim*, the plaintiff, Ki Beon Kim ("Kim"), alleged that he invented an orthodontic device and sought assistance from the defendants in finalizing and marketing the product. One of the defendants obtained two patents relating to the device. Kim filed suit in state court, defendants removed the case to federal court, and Kim filed a motion to remand. *Kim*, 525 F. Supp. 3d at 1002. The court held that Kim's unjust enrichment claim raised a substantial question of federal patent law because Kim alleged that he had provided essential information and prototypes to defendants, who excluded him from the patent application, from credit for invention, and from financial benefits from the patent, misappropriating the invention to Kim's detriment. *Id.* at 1006. In the

---

[1] The *Larson* court went on to hold that Larson did not have standing to assert claims under § 256 because he had assigned his interest in the wakeboard tower patents to Correct Craft, and, as long as he had not succeeded in voiding these assignments, he had no financial interests in the wakeboard patents and lacked an injury in fact sufficient to confer standing. *Larson*, 569 F.3d at 1326-27. In the instant case, the STACP does not suggest that Blair assigned any interest in the 329 Patent to Smith or Anderson or that he signed any agreement divesting him of inventorship, ownership, or a financial interest in the 329 Patent.

*Kim* case, as in this case, "[t]he thrust of Plaintiff's argument is that Defendants induced him into providing critical ideas … before excluding him as an inventor on the Patent[]." *Id.* at 1007.  If Anderson and Smith are the true inventors and Barrel Proof is the true owner of the 329 Patent, "there is no reasonable claim that [Barrel Proof] has been unjustly enriched" by exploiting the 329 Patent. *Kim*, 525 F. Supp. 3d at 1007-08.  If, however, Blair has a valid claim of inventorship, Anderson, Smith, and Barrel Proof may have been, or may be in the future, unjustly enriched.  The court concludes that, like the plaintiffs in *Larson* and *Kim*, Blair has stated a viable § 256 claim against Barrel Proof, which is identified in the 329 Patent as the owner and applicant of the 329 Patent (Dkt. No. 62-2, ¶ 36), in Count I of the STACP.

      B.      Personal Jurisdiction over Barrel Proof

Barrel Proof contends that the court lacks personal jurisdiction over it because Barrel Proof is a Tennessee limited liability company with its principal place of business in Indiana, does not operate in Massachusetts, and does not have minimum contacts with the Commonwealth (Dkt. No. 63 at 5-6).  For his part, Blair does not contend that the court has general personal jurisdiction over Barrel Proof (Dkt. No. 63 at 5, Dkt. No. 66 at 2-3).  Instead, Blair argues that any Massachusetts contacts by Barrel Proof's members – Smith and Anderson – are imputable to Barrel Proof, and, he argues, Smith is a Massachusetts resident who has performed business activities for Barrel Proof from his Massachusetts residence that relate to Blair's claims against Barrel Proof, providing a basis for specific personal jurisdiction over the limited liability company (Dkt. No. 66 at 3-4).

Blair bears the burden of proving personal jurisdiction. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  He may do so by relying on the so-called prima facie method, which "'permits the district court to "consider only whether

the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."'" *Id.* (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995)). The court is directed to accept Blair's evidentiary proffers as true "for the purpose of determining the adequacy of the prima facie jurisdictional showing," *Foster-Miller, Inc.*, 46 F.3d at 145, and "construe them in the light most congenial to the plaintiff's jurisdictional claim." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

In Massachusetts, "the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process …." *SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50, 52 (Mass. 2017). The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, provides, in pertinent part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity, arising from the person's … transacting any business in this commonwealth." "For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard*, 290 F.3d at 55 (citing cases). The First Circuit has said, as to unincorporated partnerships, that, as a general rule, "jurisdiction over a partner confers jurisdiction over the partnership." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990). "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements – the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 551 (Mass. 1994) (citing *Good Hope Indus., Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 80 n.17 (Mass. 1979)).

In support of his assertion of personal jurisdiction over Barrel Proof, Blair points to activities on behalf of Barrel Proof in which, he alleges, Smith engaged from his residence in Massachusetts. Blair attests that from August 2022 through September 25, 2025, Smith, a resident of Massachusetts, collaborated with Blair and Anderson on the development of technology to remotely measure and monitor liquid levels in oak barrels in which bourbon was stored (Dkt. No. 66-1, ¶ 3). The extent of inventive contributions, if any, made by Smith is directly relevant to Blair's claim of inventorship and a possible resulting ownership interest in the 329 Patent. Blair alleges that, in furtherance of work on the project on behalf of Barrel Proof, Smith, and Anderson, Smith sent and received emails and participated in telephone calls and Zoom conferences with third-party consultants who worked on aspects of the technology and preparation of a prototype (Dkt. No, 66-1, ¶ 3), and he engaged an attorney to prepare corporate documents for Barrel Proof (Dkt. No. 66 at 4). All of this work was essential to the filing of the nonprovisional patent application that resulted in issuance of the 329 Patent, which excluded Blair as an inventor and identified Barrel Proof as the applicant and owner (Dkt. No. 66-1, ¶ 4). The record includes copies of Smith's numerous communications with these vendors, which, Blair asserts, originated or were received in Massachusetts (Dkt. No. 49-2 at 26-30, 46-47, 107-123). Smith continued to engage with these third-party vendors, discuss development of the invention, and assist with seeking investors and marketing the technology protected by the 329 Patent after Barrel Proof was formed (Dkt. 66-1, ¶ 8). Blair further alleges that Smith – while residing in Massachusetts – conspired with Anderson to deprive Blair of inventor status and any ownership interest in the 329 Patent, which names Barrel Proof as the patent's owner. Where Barrel Proof, through its member Smith, engaged in activities in Massachusetts that are a substantial basis of Blair's claim that he was illegally denied inventor status and the financial

benefits such status might confer, Blair has made the requisite prima facie showing that the court has personal jurisdiction over Barrel Proof.

Turning to the constitutional inquiry, "[d]ue process requires that the defendant 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018) (second alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 316 (1945)). To establish specific personal jurisdiction over Barrel Proof, Blair must show that "(1) [his] claim arises directly out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in the forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum court's foreseeable; and (3) the exercise of jurisdiction is reasonable." *Id.* (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

Barrel Proof's contention in support of its lack of personal jurisdiction defense is limited to the following: "Blair has not alleged his claims arise of [sic] Barrel Proof's activities in Massachusetts because it was never formed in Massachusetts and does not conduct business in Massachusetts. Therefore, Barrel Proof does not possess minimum contacts within the state and cannot be subject to the jurisdiction of this Court" (Dkt. No. 63 at 6). Barrel Proof ignores the principle that work performed by Smith on behalf of the LLC can be conduct attributable to Barrel Proof for purposes of the personal jurisdiction inquiry because Blair claims that Smith acted on Barrel Proof's behalf. *See, e.g., Robertson v. Premier Fitness, LLC*, Case No.: 2:22-cv-977-AMM, 2023 WL 6536183, at *4 (N.D. Ala. Feb. 2, 2023); *see also Daynard*, 290 F.3d at 55

(when an agent is authorized to act on behalf of a principal, the agent's actions may be attributed to the principal for purposes of personal jurisdiction); *Donatelli*, 893 F.2d at 466.

First, as is set forth above, Blair contends that his claims arise in significant part from Smith's activities in Massachusetts, including communications with third party vendors and an attorney who prepared organizational documents for Barrel Proof that excluded Blair as a member.

Second, Blair has adequately alleged that, through Smith, Barrel Proof intentionally availed itself of the privilege of conducting business activities from Smith's residence in Massachusetts, thereby invoking the benefits and protections of the Commonwealth's laws. "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). The focus should be on the "voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 5 (1st Cir. 2016) (citing *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007)). Smith's Massachusetts activities on behalf of Barrel Proof were purposefully focused on furthering the project rather than being random or attenuated, and they were voluntarily initiated and pursued by Smith rather than by a third party.

Finally, the so-called Gestalt factors point in favor of the court exercising personal jurisdiction over Barrel Proof. The factors that govern this reasonableness inquiry are "'(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest

in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive justice policies.'" *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 274 (D. Mass. 2017) (quoting *Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117, 126 (D. Mass. 2016)). It is presumptively reasonable for a court to assert personal jurisdiction over a defendant "once it has been established that the claim arises out of forum-based conduct and the defendant purposely availed itself of the laws of the forum state." *Id.* (citing *Burger King Corp.*, 471 U.S. at 476). This case was initiated in this court by D.D., a Massachusetts-based limited liability company alleged by Blair to be owned by Smith and Anderson (Dkt. No. 60-1 at 2). In response, Blair asserted counterclaims against D.D. and third-party claims against Smith and Anderson, who are members of Barrel Proof (and likely the only members). Where Smith and Anderson, who are Barrel Proof's members, initiated litigation against Blair, a Kentucky resident, in this court, there is no special or unusual burden in requiring Barrel Proof to appear in this district, and its presence as a third-party defendant will further the plaintiff's interest in obtaining complete relief and the judicial system's interest in efficient resolution of the controversy between these parties. Indeed, Barrel Proof has not advanced any argument "as to why it would be unconstitutionally unfair to compel [it] to litigate in Massachusetts." *Id.*

### IV. Conclusion

For the foregoing reasons, the court GRANTS John Blair's Motion for Leave to File Second Amended Third-Party Complaint (Dkt. No. 60).

It is so ordered.

Dated: October 20, 2025            Katherine A. Robertson
                                   KATHERINE A. ROBERTSON
                                   U.S. MAGISTRATE JUDGE